Turley, J.,
delivered the opinion of the court.
Peter Catron, the lessor of the plaintiff in ejectment, claims title to the premises in dispute, by virtue of an entry thereof made in the proper land office of the State, on the 25th day of August, 1824, and a grant thereon from the State, bearing date tin the 29th October, 1840. To protect himself against this legal title, the defendant shows in evidence, that on the 13th day of December, 1834, a judgment was rendered before a justice of the peace, of Sullivan county, in favor of Jas. W. Wiley, against Peter Catron and Eliza Catron, upon which judgment an execution was regularly issued, which was, on the 28th day of March, 1850, levied upon the tract of land, now the subject matter of controversy, which was then held by Peter Catron by virtue of his entry of the 25th of August, 1824, the proceeding upon which judgment and execution was returned to the county court of Sullivan, where there *25 was a judgment of condemnation against the land upon which a venditioni exponas, was issued, bearing test the third Monday of May, 1835, upon which the sheriff returned that he did on the 15th day of August, 1S35, sell said tract of land to Joseph Newland, at the price of seventy-three dollars, he being the highest and best bidder therefor.
The defendant further defended himself by showing that on the 16th of September, 1842, Peter Gardner recovered a judgment against one Allen Catron, a son of Peter Catron’s, before a justice of the peace, in Sullivan county, upon which an execution was issued, and levied by a constable of said county, upon the land in dispute on the 12th day of October, 1842, the proceedings upon which were returned to the circuit court of Sullivan, and a judgment of condemnation regularly had thereon, at the November term 1842; upon which a venditioni exponas was issued, bearing test of said term, under and by virtue of which the sheriff of said county sold said land on the 6th day of February, 1843, to the defendant Crutsinger, for the sum of one hundred dollars, all of which appears from his return thereon. The defendant also showed in evidence other judgments and executions from justices of the peace, in said county of Sullivan, against the said Allen Catron, under which said land had been duly condemned by Circuit Court of the county, and sold bj the sheriff upon venditioni exponas, he, the defendant, being the purchaser. And he thereupon read in evidence, a deed of bargain and sale from J. B. Hamilton, sheriff of Sullivan county, bearing date the Oth day of March, 1843, by which the land was conveyed to him in consideration of his said purchase under said judgments and executions against. *26 Allen Catron; and then, proved that Allen Catron had been living on the land for more than nine years before the rendition of the judgments against him.
Upon this state of facts, the Court said to the jury: “It is argued by the counsel for the defendant, that the levy and sale under the judgment of Wiley against Peter Catron in 1835, operated so as to divest the plaintiff of his legal title, and that his grant -which issued after that date, inures to the benefit of the purchaser at the execution sale. No deed of conveyance has been produced founded upon the sale under the Wiley- judgment, and in my opinion, the levy and sale by the sheriff under Wiley’s judgment, did not divest Peter Catron, the plaintiff, of his legal title, nor would the issuance of the grant inure to the benefit of the purchaser at that sale, at law.
“It is further argued by the counsel for the defendant, that it is shown by the testimony in the case, that Allen Catron, had seven years adverse possession of the land, and that the levy and sale of the land as his, and the sheriff’s deed in pursuance thereof, divested the legal title out of Peter Catron. Supposing Allen Catron to have had seven years possession, without any deed, such possession could not confer upon him such a title as could be the subject of a levy and sale at law."
In this charge there is, as we think, no error. It presents for consideration, two questions. 1st. What is the effect of a levy and sale of an interest in land held by entry, without an assignment or conveyance thereof by the sheriff who made the sale? 2nd. Is the right which is acquired by seven, years adverse possession of land, without a deed or other assurance purport- *27 iag to convey title thereto, such an interest as is subject to execution sale?
In the discussion of the first proposition it is to be observed as preliminary thereto, that the defendant in ejectment has no privity whatever with Joseph New-land, the purchaser, under the judgment and execution in favor of Jas. Wiley, against Peter Catron, and there- > fore occupies the position of one in possession attempting to protect himself against the legal title set up by the plaintiff in ejectment, by showing a better outstanding-title in a third person.
Now, though it be well settled law, that this may be done, yet it is equally, well settled, that such outstanding title must be a present subsisting legal title, as the whole proposition is based upon the plain matter of fact, that it is impossible that there shall be a good subsisting legal title in two different persons claiming in different rights to the same land; and that the possession thereof ought not, in justice and propriety, to be disturbed, except by him who has such title, and is debarred from the enjoyment of it by a trespasser.
Is this outstanding title attempted to be set up of the character required? We are sure that it is not, because we think that in the first place no legal title was acquired by Joseph Newland, under the levy and sale made under the judgment of James Wiley, against Peter Catron, in the year 1834. It is argued that a levy of an execution upon real estate and the return of the sheriff that he had sold it, ipso facto, vest the legal title in the purchaser. We do not think so; the levy of an execution upon land does not divest the seisin of the owner, the defendant; no title or interest thereto, is vested in the sheriff by the levy, he is the mere agent *28 under the law to sell; the judgment and the execution constitute his authority to make the sale, but when he exposes the land at public auction, and knocks it down to the highest bidder, there is nothing but a contract to buy and sell, at the price paid, which can only be executed by a conveyance which is to be made by the sheriff, and until this is done, no title whatever passes to the purchaser, and he may if he choose, refuse to complete the purchase, if he be willing to submit himself to the legal consequences of such refusal. To hold otherwise would be to hold, that lands may be passed without livery of seisin or other formality substituted therefor by statute; for though land is subjected to execution by statute, yet it is not provided that the levy of the execution, and a return of sale shall constitute a mu-niment of title. The execution is the authority, and the return, mere information for the court, and the parties interested, showing how the authority had been executed; indeed we doubt not that a deed of conveyance, executed by a sheriff to a purchaser, under an execution sale, regularly made, would convey a good, legal title, though he never returned to court, the name of the purchaser. A levy of an execution upon personal property, vests the legal title in the sheriff, and when he sells it, he delivers it to the purchaser; this constitutes a good sale. But when an execution is levied upon land, no interest whatever is vested thereby, in the sheriff; upon a sale made, he does not pass the possession, for he has none to pass, but his deed of bargain and sale made thereon, by operation of law transfers the legal title, and the purchaser is entitled to his ejectment to get into possession.
*29 When the legislature thought proper to subject lands held by entry, to execution, that which had been previously considered to be an equity, and not, therefore, liable to execution, was placed thus far upon the same footing with land held by grant or deed constituting a legal title; having assumed such form, the same formalities must be required in the sale of it; and the sheriff or other officer selling it, must convey it by some written instrument which will be sufficient for that purpose, and which must be either a deed in form, or an assignment, regularly made, of the entry. When this is done, the purchaser is substituted to the place of the defendant in the execution, the owner, of the land lying in entiy; and he may procure a grant in his own name, or if one be afterwards issued in the name of him who entered, it shall inure to his benefit; but if there be no such transfer by the sheriff to the purchaser, he at most, has nothing but equity, which can only be enforced in a court of chancery, where the grant has been issued in the name of the enterer.
But in the second place, even supposing that an interest was acquired by Joseph Newland, under this execution sale, is that a present subsisting interest? It seems to us not. The sale was made in 1834, more than thirteen years ago; this sale was never executed; Peter' Catron was never ousted of possession, but on the contrary, has retained the same ever since, until the entry of the defendant, in 1840, five years after the sale, a grant issued to him in his name, and from the date of the sale, up to the present time, we hear nothing more of Newland; he never comes forward to assert his right in any mode whatever, either by claim or other *30 wise; the inference is irresistible that he has abandoned it.
The second question presented under the charge, is, whether the interest acquired in land by a naked occupation of seven years without title or any thing purporting to convey title, is liable to execution? It has been invariably and sufficiently held that it is not; such possession constitutes a mere defence against a possessory action, which is lost the moment the possession is abandoned; no title is acquired to lands so held, but a mere right of possession, which is not alienable nor descendible; and of course is not liable to the payment of debts, because it is no interest or estate in lands.
We therefore think there is no error in charge of the circuit judge, and affirm the judgment of the court below.